# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| TIM McKENZIE, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 17-0111-WS-B |
| | ) |
| JANSSEN BIOTECH, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter comes before the Court on Plaintiffs' Motion for Remand (doc. 34). The Motion has been briefed and is now ripe for disposition.

**I.  Background.**

On October 22, 2016, plaintiffs, Tim and Sherrie McKenzie, by and through counsel, filed an unsigned Complaint (doc. 1-1, at 1) against defendants, Janssen Biotech, Inc. and Dr. William Sullivan, in the Circuit Court of Monroe County, Alabama. On February 14, 2017, plaintiffs filed an Amended Complaint (doc. 1-1, at 25) against the same defendants in the same court.[1] The Amended Complaint alleged that plaintiff Tim McKenzie took Remicade to treat his psoriatic arthritis, and that "[t]he drug was prescribed by Dr. William Sullivan." (Amended Complaint, ¶ 2.) Plaintiffs' pleading further alleged that McKenzie "experienced complications from severe and significant neuropathy" while taking Remicade, and that he suffered injuries. (*Id.*, ¶ 3.) According to the Amended Complaint, McKenzie "and his prescribing health care providers were unaware of the full nature and degree of increased risks associated with the use of Remicade," and would have used "other treatments" had they known. (*Id.*, ¶ 4.) In December

---

[1]  The copy of the Amended Complaint that defendants attached to their Notice of Removal (doc. 1) omits all even-numbered pages. Eventually, defendants recognized their error and filed a "Supplemental Submission of State Court Action" (doc. 24) in this District Court, to which they attached the entire Amended Complaint as an exhibit. (*See* doc. 24-1, at 25-47.)

2015, McKenzie "was diagnosed with demyelinating polyneuropathy resulting from the administration of the drug, Remicade." (*Id.*, ¶ 5.)

The Amended Complaint described the McKenzies as Alabama residents, indicated that Janssen is a Pennsylvania corporation with its principal place of business in Pennsylvania, and identified Dr. Sullivan as "a practicing physician with his principal offices in Fairhope, AL." (*Id.*, ¶¶ 6-8.) With regard to the timing of filing suit, plaintiffs pleaded that, despite their diligence, they did not and could not have discovered the connection between McKenzie's injuries and Remicade "until a date within the applicable statute of limitations," and that defendants had fraudulently concealed "the true risks associated with ingesting Remicade." (*Id.*, ¶¶ 20-21.) Plaintiffs raised seven state-law causes of action against defendants in their Amended Complaint, to-wit: strict liability (failure to warn), negligence, breach of implied warranty, breach of express warranty, fraud, loss of consortium, and punitive damages. In large part, these claims were pleaded against "defendants" generically, without separating out which factual allegations go with defendant Janssen (the maker of the drug) and which with defendant Dr. Sullivan (the prescribing physician). Nonetheless, plaintiffs now identify four subparagraphs in the negligence claim (Count II) that purportedly relate to Dr. Sullivan, including the following:

> "e. Failure to advise that consumption of the drug Remicade could result in severe and disabling side effects, including but not limited to complications arising from serious and significant infection and death;
>
> \* \* \*
>
> "g. Failure to provide timely and/or adequate warnings about the increased potential health risks associated with use of the drug Remicade;
>
> \* \* \*
>
> "i. Failure to provide adequate instructions to doctors and patients to manage and mitigate known risks associated with the use of Remicade; and
>
> "j. Any and all other acts of negligence with respect to the drug Remicade which may be shown at trial."

(Amended Complaint, ¶ 59.)

On March 15, 2017, defendant Janssen filed a Notice of Removal (doc. 1) removing this action to this District Court. Federal jurisdiction was predicated on the diversity provisions of 28 U.S.C. § 1332. In the Notice, Janssen conceded that "Dr. Sullivan is a non-diverse defendant" (doc. 1, ¶ 5), whose presence would ordinarily destroy complete diversity and prevent subject

matter jurisdiction from attaching pursuant to § 1332.[2] Nonetheless, in the context of this case, Janssen maintained that Dr. Sullivan's "citizenship is not relevant to the removal analysis because he was fraudulently joined solely in an attempt to defeat diversity." (Doc. 1, ¶ 5.) Now the McKenzies have filed a Motion for Remand (doc. 34) in which they maintain that diversity jurisdiction is lacking because Dr. Sullivan was not fraudulently joined, such that his non-diverse status precludes § 1332 jurisdiction and compels remand to state court. The sole jurisdictional issue presented by the Motion to Remand (and the sole issue on which that Motion turns) is whether Dr. Sullivan was or was not fraudulently joined as a defendant in this action.[3]

---

[2] It is undisputed that the amount-in-controversy prong of § 1332 jurisdiction is satisfied. Indeed, in several counts of the Amended Complaint, the McKenzies specifically demand damages in excess of $75,000. (*See* Amended Complaint, at 16 (demanding damages "in an amount greater than $100,000" on breach of implied warranty claim), 17 (demanding damages "in an amount greater than $100,000" on breach of express warranty claim), 19 (demanding "compensatory damages in an amount greater than $100,000" on fraud claim), 21 (demanding "compensatory damages in an amount greater than $100,000" on punitive damages claim, oddly enough).

[3] On April 20, 2017, more than five weeks after the removal of this action to this District Court, the McKenzies filed what was misleadingly styled a "First Amended Complaint" (doc. 20), even though it was actually their Second Amended Complaint (and will be referred to herein by that label). In this Second Amended Complaint, the McKenzies augmented their claims against Dr. Sullivan by adding a specific cause of action against him for medical negligence, identified in the pleading as Count VI. In support of that claim, plaintiffs recited the following factual allegations: (i) Dr. Sullivan treated Tim McKenzie with Remicade beginning in July 2012 (doc. 20, ¶ 81); (ii) in so doing, Dr. Sullivan provided services to McKenzie within the line and scope of his profession (*id.*, ¶ 82); (iii) when McKenzie suffered permanent adverse effects from Remicade in November 2014, Dr. Sullivan "failed to detect that Plaintiff was suffering from Remicade-induced effects … and continued to infuse Plaintiff further injuring Plaintiff" (*id.,* ¶ 83); (iv) Dr. Sullivan's negligence caused McKenzie's injuries in multiple respects, including his failure to warn McKenzie of the risks of using Remicade, his failure to obtain informed consent from McKenzie, his negligent monitoring of McKenzie, his failure to provide adequate and timely medical care, his failure to comply with applicable standards and procedures concerning McKenzie's care, his failure to observe or monitor McKenzie, and his failure to train or supervise others providing care to McKenzie (*id.*, ¶ 84); and (v) Dr. Sullivan violated applicable standards of care and his negligence combined and concurred with Janssen's to cause McKenzie's injury in November 2014 (*id.*, ¶ 85).

## II. Analysis.

### A. *Removal Jurisdiction and Burden of Proof.*

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must demonstrate the existence of federal jurisdiction. *See, e.g., Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) ("the burden of establishing removal jurisdiction rests with the defendant seeking removal"); *City of Vestavia Hills v. General Fidelity Ins. Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012) ("The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction."). This burden applies with equal force in the context of a motion to remand. *See Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009) ("On a motion to remand, the removing party bears the burden of showing the existence of federal subject matter jurisdiction."). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all jurisdictional doubts resolved in favor of remanding the action to state court. *See, e.g., Scimone*, 720 F.3d at 882 ("we strictly construe the right to remove and apply a general presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand") (citation and internal marks omitted).

Here, defendant Janssen predicates federal subject matter jurisdiction solely on the diversity provisions of 28 U.S.C. § 1332. That section confers original jurisdiction on federal district courts to entertain civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. *See, e.g., Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) ("For federal diversity jurisdiction to attach, all parties must be completely diverse … and the amount in controversy must exceed $75,000.") (citations omitted). The Eleventh Circuit has instructed that "[i]n light of the federalism and separation of powers concerns implicated by diversity jurisdiction, federal courts are obligated … to scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (citations omitted).

As a general proposition, "[d]iversity jurisdiction requires complete diversity between named plaintiffs and defendants." *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005). The Amended Complaint appears to reflect that both the McKenzies and

Dr. Sullivan are citizens of Alabama. On its face, then, the pleading does not satisfy the complete diversity prerequisite for § 1332 jurisdiction. Nonetheless, Janssen argues that complete diversity is present here pursuant to principles of fraudulent joinder. That doctrine "provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). The parties vigorously dispute whether Dr. Sullivan was fraudulently joined. If he was, then his citizenship is disregarded for diversity purposes and federal removal jurisdiction properly lies. If he was not fraudulently joined, however, then there is no complete diversity between plaintiffs and defendants, § 1332 jurisdiction does not exist, removal was improper, and this matter must be remanded.

### B. Fraudulent Joinder.

#### 1. Legal Standard.

"In a removal case alleging fraudulent joinder, the removing party has the burden of proving that … there is no possibility the plaintiff can establish a cause of action against the resident defendant." *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998) (citation omitted); *see also Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) ("To establish fraudulent joinder, the removing party has the burden of proving by clear and convincing evidence that … there is no possibility the plaintiff can establish a cause of action against the resident defendant") (citation and internal marks omitted).

"The burden of establishing fraudulent joinder is a heavy one." *Pacheco de Perez*, 139 F.3d at 1380; *see also Stillwell*, 663 F.3d at 1332 (similar). "If there is even a possibility that a state court would find that the complaint states a cause of action against … the resident defendant[], the federal court must find that the joinder was proper and remand the case to the state court." *Stillwell*, 663 F.3d at 1333 (citations omitted); *see also Pacheco de Perez*, 139 F.3d at 1380 ("Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court."). Thus, the plaintiff "need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Stillwell*, 663 F.3d at 1333 (citation omitted); *see also Ullah v. BAC Home Loans Servicing LP*, 538 Fed.Appx. 844, 846 (11th Cir. Aug. 16, 2013) (adopting the "even a possibility" formulation and explaining that "[t]he standard for evaluating whether the plaintiff can establish a cause of action against the resident defendant is very lenient").

Significantly, the fraudulent joinder standard differs from, and is less stringent than, the *Twombly / Iqbal* "plausibility" test that governs motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Kimball v. Better Business Bureau of West Florida*, 613 Fed.Appx. 821, 823 (11th Cir. June 2, 2015) ("Notably, the standard for assessing fraudulent joinder differs from the one used for Rule 12(b)(6) motions to dismiss[.]"). Whereas the *Twombly* test "asks for more than a sheer possibility that a defendant has acted unlawfully, … all that is required to defeat a fraudulent joinder claim is a possibility of stating a valid cause of action." *Stillwell*, 663 F.3d at 1333 (citations omitted). Unlike the plausibility test that governs Rule 12(b)(6) motions in federal court, the Eleventh Circuit utilizes a possibility test for fraudulent joinder that incorporates pleading standards applicable in state court.[4]

Under Alabama law, "dismissal for failure to state a claim is properly granted only when it appears beyond a doubt that the plaintiff can prove no set of facts entitling him to relief." *Stovall v. Universal Const. Co.*, 893 So.2d 1090, 1101 (Ala. 2004) (citations omitted); *see also Ex parte Austal USA, LLC*, --- So.3d ----, 2017 WL 836567, *5 (Ala. Mar. 3, 2017) ("a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief") (citation and internal quotation marks omitted); *Mooneyham v. State Bd. of Chiropractic Examiners*, 802 So.2d 200, 203 (Ala. 2001) ("[m]otions to dismiss under Rule 12(b)(6) should be granted sparingly") (citation omitted). Thus, Alabama law provides that "[t]he dismissal of a complaint is not proper if the pleading contains even a generalized statement of facts which will support a claim for relief." *McKelvin v. Smith*, 85 So.3d 386, 389 (Ala.Civ.App. 2010) (citations and internal quotation marks omitted).[5] The fraudulent joinder analysis in this case proceeds in recognition of that legal standard.

---

[4] *See Stillwell*, 663 F.3d at 1334 ("To determine whether it is possible that a state court would find that the complaint states a cause of action, we must necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court."); *Hunt v. Nationstar Mortgage, LLC*, --- Fed.Appx. ----, 2017 WL 1325253, *3 (11th Cir. Apr. 11, 2017) (similar).

[5] Alabama courts have consistently explained that the threshold a plaintiff's pleading must meet is quite low, and that "a complaint is sufficient if it puts a defendant on notice of the claims asserted against him or her." *Childers v. Darby*, 163 So.3d 323, 327 (Ala. 2014). Even "the pleading of legal conclusions is not prohibited, as long as the requisite fair
(Continued)

### 2. *Application of Fraudulent Joinder Principles to McKenzies' Claims against Dr. Sullivan.*

The McKenzies' Amended Complaint is not terribly detailed in its exposition of the claims against Dr. Sullivan or the facts upon which they rest.[6] But it does not have to be. In order to overcome the "very lenient" hurdle of fraudulent joinder, the Amended Complaint need only support a possibility that the McKenzies can establish a cause of action against Dr. Sullivan. It does. On its face, the Amended Complaint alleges that Dr. Sullivan prescribed Remicade to Tim McKenzie, that Dr. Sullivan failed to advise McKenzie about the "severe and disabling side effects" of that drug, and that Dr. Sullivan failed to warn McKenzie that using Remicade could subject him to "increased potential health risks." Those allegations, albeit patchy, would appear to support a colorable claim of negligence against Dr. Sullivan, and thereby preclude a determination that it is beyond doubt that the McKenzies can prove no set of facts entitling them to relief from Dr. Sullivan. As such, the fraudulent joinder doctrine is unavailing to exclude the non-diverse defendant's citizenship because Janssen (the removing defendant) has failed to show by clear and convincing evidence that there is no possibility McKenzie has asserted a colorable claim against Dr. Sullivan. *See Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1284 (11th Cir. 2006) ("Our task is not to gauge the sufficiency of the pleadings in this case. Our inquiry is more basic: we must decide whether the defendants have proven by clear and convincing evidence that no Alabama court could find this complaint sufficient …. Henderson's patchy allegations may ultimately prove insufficient, but we are unable to say there is no possibility she has asserted a colorable claim"); *Ullah*, 538 Fed.Appx. at 846-47 (summarizing

---

notice is provided thereby to the opponent." *Christy v. Smith Mountain, Inc.*, 855 So.2d 1103, 1106 (Ala.Civ.App. 2003) (citation omitted).

[6] For purposes of the fraudulent joinder inquiry, "we assess jurisdictional facts at the time of removal." *Scimone*, 720 F.3d at 882; *see also Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005) ("[t]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal") (citation omitted); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 n.13 (11th Cir. 1994) ("Jurisdictional facts are assessed on the basis of plaintiff's complaint *as of the time of removal*."). Therefore, the operative pleading is the Amended Complaint filed in February 2017 (one month before removal), and not the Second Amended Complaint filed in April 2017 (one month after removal).

*Henderson* as holding that fraudulent joinder standard is not met where "statements in the complaint, although not referring to the non-diverse defendant specifically, set forth allegations which provided at least some notice of the claim," even though "the 'patchy allegations' might ultimately prove insufficient").

The removing defendant's three counterarguments do not undermine this conclusion. First, Janssen maintains that the Amended Complaint does not even raise a negligence claim against Dr. Sullivan. (Doc. 37, at 6-7.) Janssen's position is that the negligence claim in Count II is directed solely at defendants who undertook "the manufacturing, marketing, distribution, and/or promotion" of Remicade, which Dr. Sullivan did not. In so arguing, defendant is correct that much of Count II appears aimed at Janssen Biotech for its actions in manufacturing, marketing and distributing Remicade; however, defendant is incorrect in its contention that Count II cannot reasonably be read as proceeding against Dr. Sullivan, as well. Count II contains numerous references to "Defendants" in the plural, which would appear to incorporate the only two named defendants in the case, Janssen and Dr. Sullivan. Certain factual allegations in Count II would appear to apply with equal force to the prescribing physician defendant, not just the drug manufacturer defendant.[7] On this record, there is at least a possibility that an Alabama court could find that Count II of the Amended Complaint (despite its flaws and imperfections) is directed at Dr. Sullivan in addition to Janssen, rather than solely at Janssen.

Second, Janssen argues that Dr. Sullivan is fraudulently joined because Count II does not comply with Alabama's heightened pleading standard for medical negligence. In particular, Janssen points to the Alabama Medical Liability Act (the "AMLA"), which requires a plaintiff bringing an action against a health care provider for breach of the standard of care to plead detailed facts about the provider's acts and omissions giving rise to the claim.[8] But Janssen has

---

[7] For example, Count II alleges that defendants "negligently misrepresented claims regarding the safety and efficacy and/or the balances of the risks and benefits" of Remicade "with the intents [*sic*] to induce Plaintiff Tim McKenzie to use the drugs." (Amended Complaint, ¶¶ 36-37.) It alleges that defendants knew "that consumers, including Plaintiff Tim McKenzie, would foreseeably suffer injury" from taking Remicade. (*Id.*, ¶ 44.) It alleges that defendants were negligent in failing to advise and warn McKenzie of Remicade's side effects and the potential health risks associated with taking it. (*Id.*, ¶ 59(e), (g).)

[8] *See* Ala. Code § 6-5-551 ("The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by
(Continued)

not shown that there is no possibility that an Alabama court could deem the McKenzies' pleading of Count II to be sufficient. After all, "the Alabama Supreme Court has not construed § 6-5-551 as a kind of inflexible, rigid pleading checklist." *Brown v. Endo Pharmaceuticals, Inc.*, 38 F. Supp.3d 1312, 1322 n.9 (S.D. Ala. 2014). The point of the statute is to give a health care provider "fair notice of the claim asserted against him and against which he had to defend." *Mikkelsen v. Salama*, 619 So.2d 1382, 1385 (Ala. 1993). Where that "fair notice" exists, the Alabama Supreme Court instructs that "the courts should strive to find that" the AMLA pleading standard is satisfied. *Id.* at 1384. Although Janssen asserts that the Amended Complaint contains technical defects as to the AMLA particulars, it does not suggest that Count II fails to give Dr. Sullivan fair notice. A reasonable reading of Count II is that plaintiffs are alleging that Dr. Sullivan negligently failed to provide his patient Tim McKenzie with advice and warnings about the side effects of Remicade, a drug that Dr. Sullivan prescribed to him. Those allegations (while certainly of less than optimal detail) would appear to provide Dr. Sullivan with fair notice of the claim, so as to pass muster under *Mikkelsen*'s interpretation of the AMLA. Under these circumstances, the Court cannot conclusively determine that there is no possibility an Alabama court would allow Count II to proceed against Dr. Sullivan.[9]

---

plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts.").

[9] Even if Count II were not sufficiently pleaded as presented in the Amended Complaint, the McKenzies cite Eleventh Circuit precedent for the proposition that the fraudulent joinder standard requires consideration of whether the state courts would allow an amendment to the pleading, and if so whether it is possible that the amendment would state a colorable claim for relief so as to withstand fraudulent joinder scrutiny. (Doc. 34, at 5.) The removing defendant fails to address this point, but there appears to be Eleventh Circuit precedent (albeit not the case cited by plaintiffs) supporting it. *See Ullah*, 538 Fed.Appx. at 846 (in fraudulent joinder context, applying Georgia law for proposition that proper remedy for an inadequate pleading is generally "to allow the plaintiff to amend the complaint and provide a more definite statement," and that potential for amendment must be considered in determining whether there is a possibility the plaintiff can establish a cause of action against resident defendant). Here, we know the McKenzies are capable of amending their complaint to provide more specifics of Dr. Sullivan's alleged medical negligence under AMLA. The proof is in the pudding. They have done exactly that, albeit after removal, in their Second Amended Complaint filed in April 2017. Defendants identify no legal grounds for concluding that there is no possibility that Alabama courts would allow such an amendment or deem that amendment sufficient to state a negligence claim against
(Continued)

Third, Janssen argues that Dr. Sullivan is fraudulently joined because plaintiffs' allegations against him are "directly contradicted" by their allegations against Janssen. (Doc. 37, at 9.) Janssen's reasoning is as follows: Plaintiffs' theory of liability is that Dr. Sullivan failed to advise or warn Tim McKenzie about the risks and side effects of taking Remicade. But that theory "cannot be reconciled with" the Amended Complaint's numerous allegations that Janssen "fraudulently, improperly, or inadequately warned doctors or health care providers of the known risks and side effects of Remicade." (*Id.* at 9-10.) Therefore, the argument goes, Dr. Sullivan's joinder must be fraudulent. The fundamental problem with this line of argument is that Alabama law permits plaintiffs to file pleadings that are inconsistent or that plead facts and claims in the alternative. *See, e.g., DRC, Inc. v. Great American Ins. Companies*, 901 So.2d 710, 714 (Ala. 2004) ("*Inconsistent*, alternative and hypothetical pleadings are permitted" under Alabama law) (citation omitted).[10] Alabama law permits the McKenzies to plead both that Janssen wrongfully failed to warn Dr. Sullivan about Remicade, and that Dr. Sullivan wrongfully failed to warn Tim McKenzie about Remicade. The Court does not find that the mere presence of inconsistent or alternative factual allegations and theories of liability eliminates any possibility that Alabama courts would find that the McKenzies can state a claim against Dr. Sullivan.

### 3. *Fraudulent Joinder and the Statute of Limitations.*

Although he did not join in the Notice of Removal and cannot be classified as a removing defendant to whom the burden of proving jurisdiction attaches, Dr. Sullivan has filed a Response (doc. 38) of his own to the Motion to Remand. In that Response, he advances one additional argument for fraudulent joinder, namely, that the McKenzies' claims against him are time-

---

Dr. Sullivan. Thus, Janssen has not shown by clear and convincing evidence that there is no possibility Tim McKenzie can establish a claim against Dr. Sullivan in the Alabama courts.

[10] *See also Ex parte King*, 591 So.2d 464, 466-67 (Ala. 1991) ("we conclude that there is no prohibition in the rules against King's pleading two alternative, inconsistent, and mutually exclusive claims in her complaint"); *Steger v. Everett Bus Sales*, 495 So.2d 608, 609 (Ala. 1986) ("a plaintiff may pursue inconsistent remedies by pleading them as alternative theories of recovery"); *Hays v. Skoog*, 2017 WL 897594, *8 (N.D. Ala. Mar. 7, 2017) ("It is well-settled that Alabama law permits inconsistent, alternative, and hypothetical pleadings. … Defendant has cited no authority that purports to abrogate this general rule in medical malpractice actions.").

barred.  Dr. Sullivan posits that the Amended Complaint is "silent as to why the claims purportedly directed at Dr. Sullivan were untimely filed, and whether such untimeliness should be excused."  (Doc. 38, at 2.)  As the Court understands it, Dr. Sullivan's timeliness objection (which is primarily set forth in a pending Motion to Dismiss (doc. 30)) is structured as follows: (i) plaintiffs' only claim asserted against Dr. Sullivan is a claim of medical negligence; (ii) under Alabama law, medical negligence claims must be brought within two years after accrual, which happens when legal injury occurs;[11] (iii) Tim McKenzie began to experience rapidly progressive bilateral sensorimotor demyelinating polyneuropathy in November 2014 (Amended Complaint, ¶ 5); and (iv) the Amended Complaint was filed on February 17, 2017, outside the two-year limitations period.  According to Dr. Sullivan, "[t]he records at removal prove that it is impossible for the McKenzies' claims to succeed because they are time-barred."  (Doc. 38, at 10.)

       This argument falls short of the stringent fraudulent joinder standard for at least two reasons.  First, it is black-letter law that "[a] statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint."  *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citation and internal marks omitted).  Because of this rule, "a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *Boyd v. Warden, Holman Correctional Facility*, 856 F.3d 853, 872 (11th Cir. 2017) (citation omitted).  Whatever else may be said, it is not "apparent from the face of the complaint" that the McKenzies' claims against Dr. Sullivan are time-barred.  Recall that the original Complaint (which named Dr. Sullivan as a defendant and included negligence allegations substantively identical to those in the Amended Complaint) was filed in state court on October 22, 2016.  The original Complaint and Amended Complaint both pinpoint the injury to Tim McKenzie as beginning "in approximately November, 2014."  (Doc. 24-1, at 2 & 26.)  It is not facially

---

[11]     This statement appears accurate and uncontroversial.  *See* Ala. Code § 6-5-482(a) ("All actions against physicians … for liability, error, mistake, or failure to cure, whether based in contract or tort, must be commenced within two years next after the act, or omission, or failure giving rise to the claim"); *Ex parte Sonnier*, 707 So.2d 635, 637 (Ala. 1997) ("The limitations period for a medical malpractice action begins to run upon the accrual of a cause of action. … Accrual occurs when the wrongful act results in legal injury to the plaintiff.") (citations and internal quotation marks omitted).

apparent from the pleading that the claim against Dr. Sullivan is time-barred; therefore, the McKenzies were not required to plead additional facts or law in their Amended Complaint to defeat that affirmative defense. Based on the pleadings, the Court cannot rule out the possibility that the McKenzies can advance claims against Dr. Sullivan that are not time-barred because the McKenzies were under no obligation to negate that defense in formulating their Amended Complaint.

Second, and more fundamentally, Dr. Sullivan's timeliness argument is grounded in a set of factual and legal assumptions that this Court cannot embrace in a fraudulent joinder analysis. Central to the argument is his statement that "Dr. Sullivan … regards the initial unserved Complaint as a nullity." (Doc. 30, at 2.) After all, Dr. Sullivan acknowledges (as he must) that the McKenzies filed their original Complaint against Janssen and him in October 2016, which plainly falls within AMLA's two-year limitations period prescribed by § 6-5-551. The only way Dr. Sullivan's timeliness argument works, then, is if the October 2016 iteration of the McKenzies' Complaint does not count for limitations purposes. Why wouldn't it count? Dr. Sullivan says it's because "[t]he McKenzies failed to exhibit a bona fide intent to have the initial Complaint filed in October, 2016 immediately served on Dr. Sullivan within the required two-year period." (*Id.* at 13 (internal marks omitted).) How do we know the McKenzies lacked such intent? Dr. Sullivan says it's because plaintiffs' lawyers failed to sign the Complaint or pay "a fee for service of process." (*Id.*)[12] The trouble is that Dr. Sullivan provides no Alabama authorities interpreting Alabama statutes and procedural rules as accelerating the prescribed period for service of process in these circumstances, imputing lack of bona fide intent where (for whatever reason) plaintiff's counsel failed to sign the complaint, or declaring a complaint to be a "nullity" under circumstances analogous to these. Even if he had, Dr. Sullivan skims over the

---

[12] As a factual matter, the latter assertion appears questionable. State-court records reflect that the McKenzies paid $596.44 in fees to the Monroe County Circuit Court Clerk's Office on October 31, 2016, just nine days after the original Complaint was filed, leaving an outstanding balance of $0. (Doc. 10-1, at 6, 8.) It is unclear what fees Dr. Sullivan contends the McKenzies were required to pay, but failed to pay, in conjunction with the filing of the Complaint. These records also undermine as irrelevant Dr. Sullivan's citation of Alabama authority for the proposition that "Paying the filing fee is a 'jurisdictional prerequisite' to commencement of a lawsuit." (Doc. 30, at 13-14.) By all appearances, the McKenzies in fact paid that filing fee and satisfied that jurisdictional prerequisite on October 31, 2016, which is within the two-year limitations period under the AMLA.

obvious need to develop a factual record to ascertain what steps plaintiffs' counsel took to perfect service of process, the timing of those steps, and the intent or lack thereof to perfect service immediately.

The Eleventh Circuit has cautioned that "[o]rdinarily, where the viability of a plaintiff's claim against a non-diverse defendant depends on whether [the discovery rule for timeliness] applies, the case should be remanded summarily; such a question is emphatically a matter for the state courts to decide." *Henderson*, 454 F.3d at 1282. This Court concludes that the same holds true where, as here, a defendant contends the first iteration of the plaintiffs' complaint should be deemed a "nullity" for limitations purposes because plaintiffs' counsel did not sign it and did not pay a service fee (the latter of which may not be supported by the attached court records). It is emphatically for the courts of Alabama to determine whether a complaint filed in circumstances such as these is or is not time-barred under Alabama laws and rules of procedure. *See id.* at 1284 ("In this case, the decision as to the sufficiency of the pleadings is for the state courts, and for a federal court to interpose its judgment would fall short of the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands."). There also appears to be a need for development of a factual record beyond that which defendants have supplied. Such factual development is properly done at the state-court level.

For all of the foregoing reasons, the Court finds that Dr. Sullivan's timeliness argument does not establish beyond a doubt that the McKenzies cannot state a claim against the non-diverse defendant. The grounds for this determination are as follows: (i) plaintiffs were not required to negate the affirmative defense of limitations in their original Complaint; (ii) the original Complaint was filed prior to expiration of the limitations period; (iii) Dr. Sullivan's "nullity" argument requires factual development that has not occurred; (iv) Dr. Sullivan's nullity argument implicates questions of Alabama law and procedure that may not be settled, and that are properly left for state courts to decide as a matter of scrupulous respect for institutional equilibrium between federal and state courts; and (v) Dr. Sullivan has not shown by clear and convincing evidence that there is no possibility that an Alabama court would deem Tim McKenzie's negligence claim against him to be timely.

**III.  Conclusion.**

A removing defendant bears a heavy burden of showing that a non-diverse defendant was fraudulently joined to defeat federal diversity jurisdiction.  Here, the defendants have shown that the Complaint and Amended Complaint may have significant defects.  The Court cannot find on this record, however, that such problems are necessarily insurmountable for the McKenzies.  Under the circumstances presented here, it is properly left to the Alabama courts to decide the sufficiency of the pleadings and whether plaintiffs have actually stated a claim against the non-diverse defendant, Dr. Sullivan.  This Court finds only that the removing defendant has failed to prove by clear and convincing evidence that there is no possibility plaintiffs can establish a cause of action against Dr. Sullivan.  Therefore, complete diversity is lacking, § 1332 jurisdiction does not exist, removal was improvident, and this case must be remanded.  Plaintiffs' Motion for Remand (doc. 34) is **granted**, and this action is **remanded** to the Circuit Court of Monroe County, Alabama, for further proceedings.

DONE and ORDERED this 21st day of June, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE